1

2

3

4

5                            UNITED STATES DISTRICT COURT

6                            NORTHERN DISTRICT OF CALIFORNIA

7

8   VICTORIA L. SPEARS,                          No. C-11-03516 JCS

9           Plaintiff,                           **ORDER DENYING DEFENDANT'S
                                                 MOTION FOR SUMMARY
10      v.                                       JUDGMENT, GRANTING PLAINTIFF'S
                                                 MOTION FOR SUMMARY
11  MICHAEL J. ASTRUE,                           JUDGMENT, AND REMANDING FOR
                                                 AWARD OF BENEFITS**
12          Defendant.                           [Docket Nos. 13, 16]

13  _____

14  **I.      INTRODUCTION**

15          Plaintiff Victoria Spears seeks review of the final decision of the Commissioner of the Social

16  Security Administration ("Commissioner") denying her application for Supplemental Social

17  Security Income ("SSI") benefits under the Social Security Act ("SSA").  Plaintiff asks the Court to

18  reverse the Commissioner's denial of benefits or, in the alternative, to remand for additional

19  administrative proceedings.  For the reasons stated below, the Court GRANTS Plaintiff's Motion for

20  Summary Judgment, DENIES Defendant's Motion for Summary Judgement, and REMANDS the

21  case for award of benefits.[1]

22  **II.     BACKGROUND**

23          **A.      Procedural History**

24          Plaintiff contends that she has been disabled and unable to work since August 3, 2006.  She

25  applied for SSI disability benefits on April 17, 2008.  Administrative Record ("AR") at 107.  On

26  July 30, 2008, the Commissioner denied her claim on the basis that her alleged disability was not

27  severe enough to prevent her from participating in all work activities.  *Id.* at 62-63.  On

28  _____

            [1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to
    28 U.S.C. § 636(c).

United States District Court
For the Northern District of California

1   reconsideration, the Commissioner again denied her claim on October 24, 2008. *Id.* at 67. On

2   November 11, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and

3   a hearing was held on September 17, 2009 in San Rafael, California before ALJ Donna Shipps. *Id.*

4   at 28, 72. On October 28, 2009, the ALJ found that Plaintiff was ineligible for SSI benefits because

5   she was not disabled. *Id.* at 13, 16. On May 13, 2011, the Appeals Council denied Plaintiff's

6   request for review of the ALJ's ruling. *Id.* at 1. Accordingly, the ALJ's decision became the final

7   decision of the Commissioner.

8          Plaintiff filed this action pursuant to 42 U.S.C. § 1383(c), which gives the Court jurisdiction

9   to review the final decision of the Commissioner. The parties have filed cross-motions for summary

10  judgment.

11  **B.     Plaintiff's Background**

12         Plaintiff was born on March 9, 1972. *Id.* at 129. She earned her GED in 1994. *Id.* at 139.

13  She was previously employed as a cashier for five years, a child care provider at Santa Rosa City

14  Schools for one year, and a teacher's assistant at Forestville Unified School District for three years.

15  *Id.* at 135. Plaintiff stopped working as a teacher's assistant on August 3, 2006 and alleges that she

16  has been disabled since then. *Id.* at 129, 134, 135. She is married to Jason Spears and has three sons

17  who were twelve, seventeen, and nineteen years old as of September 2009. *Id.* at 43, 133.

18  **C.     Medical Evidence**

19         **1.     Physical Health**

20         On September 27, 2005, while working as a teacher's assistant, Plaintiff slipped on spilled

21  milk at her school and caught herself on a table with her right arm, causing her to strain her back.

22  *Id.* at 213. According to Plaintiff, she has experienced chronic pain in her back, radiating down to

23  her knees since that time. *Id.* at 213, 221. Plaintiff was given modified work duty restrictions

24  through October 2005 and returned to work full time on November 3, 2005. *Id.* at 251. Plaintiff

25  worked for the rest of the school year, but her employment ended on August 3, 2006. *Id.* at 134.

26

27

28

**United States District Court**

For the Northern District of California

1    Despite receiving medical treatment, Plaintiff has continued to experience back pain since

2    her fall.  *Id.* at 244, 247.  She was later diagnosed with fibromyalgia, hypothyroidism, bilateral

3    carpal tunnel syndrome, wrist tendinitis, and osteoarthritis.[2]  *Id.* at 244, 307.

4              **2.       Mental Health**

5                   **a.       Dr. Burkey**

6    Between November 5, 2007 and March 15, 2010, Plaintiff received treatment from Dr.

7    Nancy Burkey, a psychiatrist, on a monthly, and sometimes bimonthly, basis.  *Id.* at 347, 364.  In a

8    Mental Capacity Evaluation completed on January 7, 2009, Dr. Burkey indicated that Plaintiff had

9    "[d]ifficulty thinking or concentrating" and had "[b]ipolar syndrome with a history of episodic

10   periods manifested by the full symptomatic picture of both manic and depressive syndromes (and

11   currently characterized by either or both syndromes)."  *Id.* at 306.  Dr. Burkey stated that Plaintiff's

12   limitations would cause her to miss more than four days of work per month.  *Id.*  She indicated that

13   Plaintiff's functional limitations included "extreme" "difficult[ies] in maintaining concentration,

14   persistence or pace," and also marked as "extreme" the limitation for "[e]pisodes of decompensation

15   within 12 month period, each of at least two weeks duration."  *Id.*   Dr. Burkey listed Plaintiff's

16   prescribed medications as Lamictal and Geodon.  *Id.*

17   On May 4, 2009, Dr. Burkey submitted a medical source statement in which she stated that

18   she saw Plaintiff every 2 to 4 weeks.  *Id.* at 347.  She stated that Plaintiff had a "fragile mood

19   disorder that cycle[d] between manic states to immobile depressives" with "very little inter-episode

20   relief."  *Id.*   On a form listing "signs and symptoms," Dr. Burkey checked the following:

21   "[a]nhedonia or pervasive loss of interest in almost all activities," "[d]ecreased energy," "[t]houghts

22   of suicide,""[b]lunt, flat or inappropriate affect," "[f]eelings of guilt or worthlessness,"

23   "[g]eneralized or persistent anxiety," "[m]ood disturbance," "[d]ifficulty thinking or concentrating,"

24   "[r]ecurrent and intrusive recollections of a traumatic experience, which are a source of marked

25   distress," "[p]ersistent disturbances of mood or affect," "[e]motional withdrawal or isolation,"

26

27          [2] Because Plaintiff does not challenge the ALJ's finding that Plaintiff has the physical ability
     to perform light work, the Court need not address Plaintiff's medical records relating to her physical
28   impairments.

"[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes," "[e]motional lability," "manic syndrome" (with the handwritten notation "episodic", "[p]ressures of speech," "[e]asy distractibility," "[s]leep disturbance," and "[d]ecreased need for sleep" (with the handwritten notation "episodic"). *Id.* at 348.

In a chart entitled "Mental Abilities and Aptitudes Needed to do Unskilled Work," Dr. Burkey reported that Plaintiff had an "unlimited or very good" ability to: "[u]nderstand and remember very short and simple instructions," "[c]arry out very short and simple instruction," "[a]sk simple questions or request assistance," "[r]espond appropriately to changes in a routine work setting," and "[b]e aware of normal hazards and take appropriate precautions." *Id.* at 349. She indicated that Plaintiff had "limited but satisfactory" ability to "remember work-like procedures," and "[m]ake simple work-related decisions. *Id.* Dr. Burkey further found that Plaintiff was "[s]eriously limited, but not precluded" from "[w]ork[ing] in coordination with or proximity to others without being unduly distracted." *Id.* However, Dr. Burkey found that Plaintiff was "[u]nable to meet competitive standards" as to: "maintain[ing] attention for [a] two hour segment," "[p]erform[ing] at a consistent pace without an unreasonable number and length of rest periods," "[a]ccept[ing] instructions and respond[ing] appropriately to criticism from supervisors," and "[g]e[tting] along with her co-workers or peers without unduly distracting them or exhibiting behavioral extremes." *Id.* Dr. Burkey determined that Plaintiff had "[n]o useful ability to function" as to her abilities to "[m]aintain  regular attendance and be punctual within customary, usually strict tolerances," "[s]ustain an ordinary routine without special supervision," "[c]omplete a normal workday and workweek without interruptions from psychologically based symptoms" and "[d]eal with normal work stress." *Id.*

In a similar chart for semiskilled and skilled work, Dr. Burkey indicated that Plaintiff's ability to "[u]nderstand and remember detailed instructions," and to "[c]arry out detailed instructions" was "[u]nlimited or very good." *Id*. at 350. However, she noted that Plaintiff was "[u]nable to meet competitive standards" in her ability to [s]et realistic goals or make plans independently of others" and that she had "[n]o useful ability to function in her ability to "[d]eal

1   with stress of semiskilled and skilled work." *Id.*   In a  handwritten notation next to this chart Dr.

2   Burkey wrote that "although bright intellectually, [Plaintiff's] mood [disorder] precludes appropriate

3   reliability in the workplace." *Id.* at 350.

4        Finally, for the chart entitled "Mental Abilities and Aptitudes Necessary to do Particular

5   Types of Jobs," Dr. Burkey noted that Plaintiff had "[u]nlimited or very good" ability to "[i]nteract

6   appropriately with the general public," but circled all of the remaining abilities in the chart

7   ("[m]aintain socially appropriate behavior," "[a]dhere to basic standards of neatness and

8   cleanliness," "[t]ravel in unfamiliar places," and "[u]se public transportation") and wrote "all is

9   unreliable due to her mood [disorder]." *Id.*

10        Dr. Burkey further determined that Plaintiff had marked restriction of activities of daily

11   living, extreme difficulty maintaining social function, moderate difficulty maintaining concentration,

12   persistence, or pace, and four or more episodes of decompensation within a year that each lasted at

13   least two weeks. *Id.* at 351.  Dr. Burkey opined that Plaintiff's impairment lasted or is expected to

14   last at least twelve months. *Id.* at 352, 353.

15        In answer to the question, "[w]hat is the earliest date that the description of symptoms and

16   limitations in this questionnaire applies," Dr. Berkey wrote "1993 – [diagnosed] in Minnesota." *Id.*

17        Dr. Burkey completed a mental work questionnaire on March 15, 2010, after Plaintiff's

18   hearing before the ALJ but before the decision of the Commissioner became final, and again listed

19   Plaintiff's diagnosis as bipolar, type II disorder. *Id.* at 361.  Dr. Burkey stated that she began

20   treating Plaintiff on November 5, 2007 and that she had been seeing her monthly since that time. *Id.*

21   She noted, however, that Plaintiff missed appointments about a quarter of the time due to her illness.

22   *Id.* Dr. Burkey stated that her diagnosis was based on two and a half years of treatment of both

23   phases of Plaintiff's bipolar disorder, rather than tests. *Id.*  She reported that Plaintiff had no

24   limitations in her ability to: carry out short and simple instructions; work in coordination with or in

25   close proximity to other people without being distracted by them; make simple work related

26   decisions; and be aware of normal hazards and take appropriate precautions. *Id.* at 361, 362.  She

27   indicated that Plaintiff had moderate impairment of her ability to: maintain attention for two hour

28   segments; sustain a routine a workday without special supervision; complete a normal work day

1   without interruptions from her psychological symptoms; and interact with her co-workers without

2   distracting them.  *Id.*  According to Dr. Burkey, Plaintiff further had marked impairment of her

3   ability to maintain regular attendance and be punctual, and accept instructions and respond

4   appropriately to criticism from supervisors.  *Id.* at 361, 362.  Dr. Burkey opined that Plaintiff had no

5   evidence of cognitive impairment, and that her judgment is adequate when she is not in a manic

6   state.  *Id.* at 365.  When Plaintiff is in a manic state, Dr. Burkey stated, she spends money she does

7   not have, and drinks and drives.  *Id.*  Dr. Burkey also reported that the severity of Plaintiff's mood

8   disorder fluctuates, but she rarely has inter-episodic periods in which she is not symptomatic.  *Id.* at

9   364.  She added that Plaintiff takes Lamictal, Prozac, Lorazepam, and Levothyroxine, and received

10  psychotherapy, although she is only partially responsive to the medications.  *Id.* at 347, 367.  Dr.

11  Burkey reported that Plaintiff has received outpatient mental health treatment since she was fifteen

12  years old.  *Id.* at 364.

13      With respect to Plaintiff's ability to perform daily activities, Dr. Burkey opined that Plaintiff

14  can maintain personal hygiene without assistance, and stated that her husband and children help her

15  with chores when she is severely depressed.  *Id.* at 366.  As to Plaintiff's ability to function socially,

16  Dr. Burkey reported that Plaintiff becomes socially isolated when she is depressed.  *Id.*  Dr. Burkey

17  also found that Plaintiff's mood affects her concentration and attention level "in direct relationship

18  with her phase of the illness."  *Id.*  Dr. Burkey also stated that when Plaintiff is depressed, "she is

19  unable to attend work or perform appropriately."  *Id.*  Dr. Burkey indicated that Plaintiff's prognosis

20  was only "fair" because she is "only partially responsive to medications."  *Id*. at 367.

21          **b.      Dr. Wong**

22      On May 17, 2008,  Dr. Patrick Wong, a psychiatrist, performed a consultative exam of

23  Plaintiff.  *Id.* at 274.  According to Dr. Wong's report, Plaintiff told him that she lost her job as a

24  teacher's assistant because the school had budget cutbacks.  *Id.*  She also reported to him that she

25  had her first manic episode in 1992, at which time she experienced a "decreased need for sleep, high

26  energy with frenetic cleaning all day and all night, emotional instability, irritability, cycling into

27  depression."  *Id.*  Dr. Wong states, "[s]he has gone through these kinds of cycles numerous times,

28  sometimes eight or nine times a year."  *Id.*  According to Dr. Wong, while she had never been

1    hospitalized, Plaintiff had received intensive outpatient treatment at Kaiser Permanente Medical

2    Center a "few years ago." *Id.*

3        Dr. Wong noted that Plaintiff "does have a history of residential treatment at the age of 15

4    years old for six months because of PCP and marijuana and LSD abuse.  She was on Prozac for

5    about a period of 15 years at a dose of 60 mg per day." *Id.*  He continues, "[m]ore recently she was

6    diagnosed bipolar type 2 by her report by Nancy Burkey, MD, at the Indian Health Center and is

7    being treated with Wellbutrin 150 mg, which she has been on for about four months, Lamictal 200

8    mg daily, and Ativan 1 mg every six hours as needed." *Id.*  According to Dr. Wong, Plaintiff told

9    him that her prescribed medications had evened out her mood "some" and made her feel "30% more

10   stable." *Id.*  He also wrote that Plaintiff had a history of postpartum depression and that she was

11   sexually abused as a child and ran away at the age of 11. *Id.*

12       Dr. Wong opined that Plaintiff's "capacity intellectually for good judgment is intact and she

13   can give reasoned, logical responses . . . [and] [h]er concentration and memory for remote issues is

14   intact." *Id.* at 275.  Dr. Wong also determined that Plaintiff could carry out simple and complex

15   instructions, relate to co-workers or the public, and respond appropriately in emergency situations.

16   *Id.* at 275, 276.  He stated:

17       [h]er ability to maintain an adequate pace and level of endurance during periods that
         her mood disorder is in remission is very good. When in her depressed phase or
18       manic phase, hypomanic phase, she is likely to experience moderate to marked
         impairment of her ability to maintain an adequate pace over an eight-hour workday. It
19       is suspected that stress will tend to increase the likelihood of manic of depressive
         episodes. It is unclear at the current time in my mind the frequency with which they
20       will occur or recur . . . . The probability of functional deterioration due to typical
         workplace stressors should be considered high though.

21

22   *Id.* at 276.  Dr. Wong further stated that Plaintiff's ability to adjust to changes in the workplace is

23   "mildly diminished" because of her reduced tolerance to stress and her mood disorder. *Id.*

24   He listed Plaintiff's diagnosis as bipolar disorder, type II "in remission."

25                    **c.      Dr. Klein**

26       On June 27, 2008, Dr. Paul Klein, a state agency psychologist, performed a record review

27   and mental residual functional capacity assessment of Plaintiff. *Id.* at 277, 289.  Dr. Klein listed

28   Plaintiff's impairments as: 1) depression; 2) anxiety; 3) "R/O panic disorder"; and 4) hallucinogen

United States District Court

For the Northern District of California

1    and marijuana addiction, which he indicated was "in remission." *Id.* at 280-283. He concluded that

2    Plaintiff has no restriction of activities in her daily living, mild difficulties in maintaining social

3    functioning, and moderate difficulties in maintaining concentration, persistence, and pace. *Id.* at

4    285. He stated that he had insufficient evidence to evaluate whether she had repeated episodes of

5    decompensation that each lasted of extended duration. *Id.*

6       Based on Function Reports completed by Plaintiff and her husband (discussed below), Dr.

7    Klein opines that Plaintiff "takes care of husband, children, cooks, cleans, shopping, grocery, drives

8    to and from school, [takes] care of 1 dog, and 3 cats, no problems personal care, walks, drives [car],

9    shops in stores and via computer, handles all aspects of finances." *Id.* at 287. Dr. Klein further

10    stated that Plaintiff's spouse "does not mention [spouse's] rapid cycling bipolar disorder." *Id.*

11       He further noted that Plaintiff had reported to Dr. Wong that she had her first manic episode

12    in 1992 and experiences cycling depression eight to nine times a year. *Id.* However, Dr. Klein gave

13    little weight to these statements, as well as the bipolar diagnosis, stating that "[Medical Expert

14    Reports ("MERS")] and spouse in [Function Report] do not mention [rapid cycling] going back to

15    2005." *Id.* Rather, Dr. Klein states, the MERS only note depression and anxiety. *Id.* Dr. Klein

16    opined that the consultative examiner (Dr. Wong) "appears to have relied on [claimant's]

17    'knowledgeable statement' regarding bipolar disorder" but concluded that the consultative

18    examiner's opinion should be afforded less weight than the opinions of the treating sources as to

19    Plaintiff's diagnosis. In particular, Dr. Klein stated, "[t]reating sources since 2005 are given greater

20    weight than [consultative examiner] because longer treatment of [claimant] and greater opportunity

21    to know [claimant] and address patterns of . . .disorders evidenced over longer time period." *Id.*[3]

22       Dr. Klein concluded that Plaintiff is moderately limited in her ability to "perform activities

23    within a schedule, maintain regular attendance, and be punctual within customary tolerances," and

24    "complete a normal workweek without interruptions from psychologically based symptoms and to

25

---

26       [3]Dr. Klein did not mention that Dr. Wong stated that Plaintiff was diagnosed with bipolar
     disorder by Dr. Burkey. Nor did Dr. Klein appear to be aware that Dr. Burkey was treating Plaintiff for
27    bipolar disorder. The January 7, 2009 Mental Capacities Evaluation, the May 4, 2009 Medical Source
     Statement and the March 15, 2010 Evaluation for Mental Disorders that were completed by Dr. Burkey
28    (discussed above) had not yet been submitted when Dr. Klein conducted his review.

perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 289, 290. He also found that Plaintiff is not significantly limited in her ability to: understand, remember and carry out both short and detailed instructions; maintain attention and concentration for long periods of time; work in proximity to others and not distract them or be distracted by them; interact appropriately with the public; accept instructions and criticism from supervisors; maintain socially appropriate behavior; respond appropriately to changes at work; and be aware of safety hazards. *Id.* As a result of that assessment, Dr. Klein opined that Plaintiff has:

> [a]dequate memory and understanding for at least simple 1-2 step tasks evidenced by capacity to shop in stores and on the Internet, manage all aspects of finances, drive her children to and from school on a daily basis[,] [a]dequate sustained concentration, persistence and pace for at least simple 1-2 step tasks[,] adequate social interaction with supervisors, coworkers, and the public[, and] [a]dequate adaptation to changes in most work-like settings . . . .

*Id.* at 291. However, he found that Plaintiff "is likely to experience moderate to marked impairment in [concentration, persistence, and pace] similarly with likelihood of emotional deterioration [due to] stress." *Id.* at 287.

### D. Plaintiff's Function Report

On April 24, 2008, Plaintiff completed a residual functional capacity form. *Id.* at 148. Plaintiff stated that she suffers from bipolar disorder type two, hypothyroidism, depression, anxiety, osteoarthritis, and fatigue. *Id.* at 134. She stated that she has a hard time concentrating and sometimes sleeps eighteen hours a day because she cannot get out of bed. *Id.* Plaintiff stated that on a typical day she wakes up and makes breakfast for her family if she feels okay, exercises if she is not sore or stiff, and goes door-to-door for her ministry or cleans her house if she feels okay. *Id.* at 141. She added that when she cooks meals for her family her hands, wrists, knees, and hips experience sharp pains or begin to ache. *Id.* at 143. On some days Plaintiff is unable to get out of bed because of her depression. *Id.* at 141. She also tries to drive her children to and from school but is sometimes not able to because of her medication side effects. *Id.* Plaintiff also prepares dinner for her family if she is not fatigued. *Id.* She reported that sometimes she cannot fall asleep until 4 a.m. because of her bipolar disorder, but she usually falls asleep before midnight. *Id.*

1    Plaintiff also stated that she takes care of her husband, children, one dog, and three cats, but

2   her husband sometimes drives her children to and from school and feeds her pets. *Id.* at 142. She

3   stated that prior to her illness she was able to complete a task, type, concentrate, wake up feeling

4   refreshed, and sleep well, although she is no longer able to do those things. *Id.* Plaintiff stated that

5   she has difficulty sleeping, experiences night sweats, and wakes up with a migraine. *Id.* She

6   reported that she is able to maintain her personal hygiene and care. *Id.*

7    Plaintiff noted that she does laundry daily but she needs help folding clothes because her

8   hands ache, and she cleans daily but also needs help because she experiences fatigue or feels

9   depressed. *Id.* at 143. She stated that she goes shopping in stores or on her computer three to four

10   hours a week. *Id.* at 144. She is able to pay her bills on time, but forgets to record or cannot

11   remember that she paid for certain items *Id.* at 144-145. Plaintiff stated that she goes door-to-door

12   for her ministry, but needs to be reminded to go. *Id.* at 145.

13    Plaintiff reported that sometimes she snaps at her family or friends, and she often gets upset

14   because she knows if she performs an activity she will feel pain. *Id.* at 146. She stated that she can

15   pay attention between thirty minutes and an hour, and she can follow written instructions but oral

16   instructions need to be repeated. *Id.* Plaintiff added that changes in her daily routine are "very

17   frustrating" and she often "freak[s] out or space[s] out" when she is driving. *Id.* at 147.

18    **E.    Spouse's Function Report**

19    Plaintiff's spouse, Jason Spears, completed a Function Report - Adult - Third Party on May

20   2, 2008. *Id.* at 149. Mr. Spears stated that he had been married to Plaintiff for nineteen and a half

21   years. *Id.* at 149. With respect to Plaintiff's daily activities, Mr. Spears stated that Plaintiff :

22    Takes prescribed medicines, complains of aches and pains, headaches, etc. Engages in Bible
     educational work as best she can. Does chores around as best she can. If she's feeling well,
23    cooks dinner for family, helps kids with homework. Spends time with family.

24   *Id.* Mr. Spears stated Plaintiff takes care of her children, which includes helping them with their

25   homework and making meals for the family. *Id.* at 150-151. He further stated that she takes care of

26   her pets, which involves giving them cat and dog food, with the help of her eleven year old son. *Id.*

27   Mr. Spears reported that Plaintiff drives a car, shops a few times a week, and pays bills. *Id.* at 152.

28   He added that Plaintiff has difficulty concentrating and can only pay attention for an hour. *Id.* at

United States District Court

For the Northern District of California

153, 154. Mr. Spears stated that Plaintiff is able to follow written instructions, but noted that he sometimes has to repeat oral instructions. *Id.* at 154. He also stated with respect to her ability to handle stress that Plaintiff can handle "[s]mall things ok" but that "[b]igger problems she needs psych. medication promptly." *Id.* at 155. Mr. Spears stated that Plaintiff "does have times where she is incapacitated due to migraine headaches, aches and pains, as well as mentally taxed, thus needing many forms of medication." *Id*. at 156. As a result, he reported, he sometimes needs to stay at home and help his wife. *Id.* at 156.

### F.       The Administrative Hearing

The ALJ held an administrative hearing on September 17, 2009. *Id.* at 28. Plaintiff, her attorney (Jim Carter), and a Vocational Expert ("VE") (Robert Raschke) attended and testified. *Id.* Plaintiff stated that she had suffered from manic depression or bipolar disorder since 1992. *Id.* at 38. Plaintiff testified that around the time she slipped on spilled milk at her school, she was also diagnosed with hypothyroidism and fibromyalgia. *Id.* Plaintiff testified that her arthritis, bipolar disorder, hypothyroidism, and stress had progressively worsened. *Id.* at 38. She stated that before she quit her job as a teacher's assistant her bipolar disorder worsened and she went to an intensive outpatient program for stress management. *Id.* at 39. She added that if she was in pain or stress, the teacher she worked with would either send her home or allow her to take a break to collect herself. *Id.* Plaintiff stated that the teacher would send her home early at least three or four times a month; the breaks were typically around an hour long and were in addition to normally scheduled breaks. *Id.* at 47, 48. According to Plaintiff, once one she was having "really bad week" the teacher told her to "just take the week off." *Id.* Plaintiff noted that she had difficulty concentrating at times, but the teacher was very supportive and understanding of her condition. *Id.* at 47. Plaintiff testified that when she injured her back, in 2005, she missed about a week and a half of work. *Id.* at 40. Plaintiff testified that she quit her job as a teacher assistant because:

> it was the end of the school year and the, the position I was hired on had moved along with the child that I was hired on for. So - - because it was a one on one teaching assignment, that's what they hired me for, the funds, that's what was paying for me.

*Id.* at 39.

Plaintiff testified that she could not perform jobs that require "physically standing or lifting" because of her back pain and arthritis in her knees, toes, and hips. *Id.* at 40.  She testified that she is unable to sit still for an hour and has to readjust her position frequently. *Id.* at 50.  She stated that she uses an inhaler for her asthma. *Id.* at 41.  She also testified that her carpel tunnel, tendinitis, and arthritis are an impediment to her finding employment. *Id.*  Plaintiff stated that on March 11, 2009 her doctor performed a nerve conduction test that verified her diagnoses of carpel tunnel syndrome and severe tendinitis in her right hand and moderate in her left hand. *Id.*  Plaintiff added that her previous employment as a cashier caused her tendinitis. *Id.*  She also stated that she has difficulty sleeping because her hips are sore, she cannot fall asleep, and she frequently wakes up at three or five in the morning and cannot fall back to sleep for two hours. *Id.* at 49.

Plaintiff testified that she drives only when she needs to, which is usually to take her son to and from school. *Id.* at 44.  She added that usually one of her sons accompanies her when she drives "just to be safe." *Id.*  She stated that she cooks simple meals for her family but it causes her pain because her arms stiffen up or she gets fatigued. *Id.*  Plaintiff added that she can wash a load of dishes but has them air dry because she cannot stand up too long due to her knee and back pain. *Id.*  Plaintiff testified that she can put a load of laundry in the washing machine, but her children typically put the clothes in the dryer because she cannot bend and stoop. *Id.*  She noted that she folds the laundry but afterwards her arms and back ache. *Id.*  Plaintiff stated that on a typical day she wakes up stiff and achy, drives her son to school if her husband or other children are not able, and sometimes does laundry or the dishes. *Id.* at 46.  However, some days she wants to sleep and stay in bed all day due to her depression. *Id.*  Plaintiff reported that she takes Lamictal for her bipolar disorder, Prozac, thyroid medication, and ibuprofen, Vicodin, or Flexeril for pain. *Id.*  Plaintiff stated that her mental problems are her primary limitation and she thinks she could perform limited work if it were not for these problems. *Id.* at 42.

VE Raschke also testified at the hearing. *Id.* at 51.  He listed the job titles, skill levels and the exertional workload of Plaintiff's past employment, as follows: 1) retail cashier, considered a 3 and light exertional workload; 2) child care worker, considered a 3 and medium exertional workload; 3) home attendant, considered a 3 and medium exertional workload; 4) attendant for

United States District Court
For the Northern District of California

disabled children, considered a 2 and medium extertional workload; and 5) an assistant teacher, considered 6 and light exertional workload. *Id.* at 52. Mr. Raschke testified that although the last job was listed in the record as an assistant teacher, there was nothing in the record indicating the education or background required for this job. *Id.* Therefore, he concluded this position should be classified as a children's attendant job, with a skill level of 3 rather than a 6, with medium exertional work. *Id.*

The ALJ asked Mr. Raschke if a person of Plaintiff's age, education, and work experience could qualify for any of her past relevant work under the following limitations: limited to occasionally carrying up to twenty pounds; frequently lifting or carrying up to ten pound; standing and walking for six hours in an eight-hour day; sitting for six hours in an eight-hour day; unlimited ability to push and pull with hand or foot controls; and climbing stairs, stopping, kneeling, balancing, or crawling a third of the time. *Id.* at 54. Mr. Raschke testified that an individual with these limitations could perform Plaintiff's past work as a cashier, but that her other past work would require too much exertion for such an individual. Mr. Raschke then testified that a person with the limitations of this hypothetical could work as a small products assembler, which only requires light exertional work and has 7,500 jobs regionally and 775,000 jobs nationally. *Id.* at 54, 55. He further testified that such an individual could be a cleaner or polisher, which also has light exertional demand and has 7,800 jobs regionally and 700,000 jobs nationally. *Id.*

The ALJ next asked Mr. Raschke if any jobs exist for a person under the following hypothetical: the person is not significantly limited in memory and can remember detailed instructions; not significantly limited in ability to engage in sustained concentration to carry out detailed instruction; the person is limited up to twenty five percent of the time in his or her ability to maintain regular attendance or be punctual or complete a normal workday without interruptions from psychologically based symptoms and to work at a consistent pace without an unreasonable number and length of rest periods; the person is not significantly limited in ability to sustain an ordinary routine without special assistance and could engage in work with close proximity to others and without distracting them; and the person could respond appropriately to changes in the workplace. *Id.* at 56. Mr. Raschke responded that no jobs exist for that hypothetical person. He went on to state

United States District Court

For the Northern District of California

1  that the limitation that placed such an individual "outside the bounds of competitive employment in

2  pretty much any industry" was the inability to be punctual and to complete a workday without

3  interference from psychological conditions up to twenty-five percent of the time. *Id.* at 57.

4       **G.**     **The ALJ's Five-Step Analysis and Findings of Fact**

5       Disability insurance benefits are available under the Social Security Act when an eligible

6  claimant is unable "to engage in any substantial gainful activity by reason of any medically

7  determinable physical or mental impairment . . . which has lasted or can be expected to last for a

8  continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C.

9  § 423(a)(1). A claimant is only found disabled if his physical or mental impairments are of such

10  severity that he is not only unable to do his previous work but also "cannot, considering his age,

11  education, and work experience, engage in any other kind of substantial gainful work which exists in

12  the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proof in

13  establishing a disability. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881

14  (1996).

15       The Commissioner has established a sequential five-part evaluation process to determine

16  whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a). At the First

17  Step, the Commissioner considers whether the claimant is engaged in "substantial gainful activity."

18  20 C.F.R. § 404.1520(a)(4)(I). If he is, the Commissioner finds that the claimant is not disabled, and

19  the evaluation stops. If the claimant is not engaged in substantial gainful activity, the Commissioner

20  proceeds to the Second Step and considers whether the claimant has "a severe medically

21  determinable physical or mental impairment . . . or combination of impairments that is severe,"

22  which meets the duration requirement in 20 C.F.R. § 404.1509. 20 C.F.R. § 404.1520(a)(4)(ii). An

23  impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic

24  work activities." 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment,

25  disability benefits are denied at this step. If it is determined that one or more impairments are

26  severe, the Commissioner will next perform the Third Step of the analysis, comparing the medical

27  severity of the claimant's impairments to a compiled listing of impairments that the Commissioner

28  has found to be disabling. 20 C.F.R. § 404.1520(a)(4)(iii). If one or a combination of the claimant's

1   impairments meet or equal a listed impairment, the claimant is found to be disabled.  *Id.*  Otherwise,

2   the Commissioner proceeds to the Fourth Step and considers the claimant's residual functional

3   capacity ("RFC") in light of his impairments and whether the claimant can perform past relevant

4   work.  20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1560(b) (defining past relevant work).  If the

5   claimant can still perform previous work, he is found not to be disabled.  20 C.F.R. §

6   404.1520(a)(4)(iv).  If the claimant cannot perform past relevant work, the Commissioner performs

7   the fifth and final step of the analysis.  20 C.F.R. § 404.1520(a)(4)(v).  At the Fifth Step, the burden

8   shifts to the Commissioner to show that the claimant, in light of his impairments, age, education, and

9   work experience, can perform other jobs in the national economy.  *Johnson v. Chater*, 108 F.3d 178,

10  180 (9th Cir. 1997); 20 C.F.R. § 404.1520(a)(4)(v).  A claimant who is able to perform other jobs

11  that are available in significant numbers in the national economy is not considered disabled, and will

12  not receive disability benefits.  20 C.F.R. § 404.1520(f).  Conversely, where there are no jobs

13  available in significant numbers in the national economy that the claimant can perform, the claimant

14  is found to be disabled.  *Id.*

15       At Step One, the ALJ acknowledged that Plaintiff has not engaged in substantial gainful

16  activity since March 25, 2008.  *Id.* at 18.

17       At Step Two, the ALJ found that Plaintiff "has the following severe impairments: bipolar

18  disorder, Type II; osteoporosis; depression; anxiety; obesity; fibromyalgia; hypothyroidism; high

19  cholesterol; osteoathritis; [and] chronic joint pain."  *Id.*

20       At Step Three, the ALJ held that Plaintiff does not have an impairment or combination of

21  impairments that meets or equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.

22  *Id.*

23       At Step Four, the ALJ addressed Plaintiff's residual functional capacity.  The ALJ followed a

24  two-step process: first, the ALJ asked whether underlying physical or mental impairments exist that

25  could reasonably be expected to cause Plaintiff's symptoms; second, finding that the first prong was

26  satisfied, the ALJ evaluated the intensity, persistence, and limiting effects of the Plaintiff's

27  symptoms to determine how much they limit the Plaintiff's ability to perform basic work activities.

28  *Id.* at 22.

With respect to Plaintiff's physical impairments, the ALJ found that Plaintiff could perform light work based on the opinion of a State agency physician and Plaintiff's testimony regarding her daily activities.  *Id*. at 21.  As to Plaintiff's mental impairments, the ALJ concluded that as a result of Plaintiff's bipolar disorder, she was limited to unskilled work.  *Id*.  She cited the opinion of the consultative examiner, Dr. Wong, in support of her conclusion.  *Id*. at 23.  Acknowledging Dr. Wong's opinion that stress would increase the likelihood of manic or depressive episodes, the ALJ concluded that Dr. Wong's opinion supported the conclusion that Plaintiff was limited to unskilled work.  *Id*.

The ALJ gave "little weight" to Dr. Burkey's assessment of the Plaintiff's mental state, stating first that Dr. Burkey had been treating Plaintiff since January 2009 and that she had completed a Medical Source Statement "after seeing the claimant for four months diagnosing bipolar disorder . . ." *Id*.[4]  The ALJ stated that Dr. Burkey "found 'her mood disorder precludes appropriate unreliability in the workplace.'" *Id*.[5]  She also acknowledged that Dr. Burkey found that Plaintiff was "markedly limited in her activities of daily living, social functioning and concentration, persistence, and pace and that she has had four or more episodes of decompensation of extended duration."  *Id*.  She went on to state, "[h]owever, the claimant has reported no psychiatric hospitalizations."  *Id*.  She further concluded, "I give very little weight to this opinion because it is not supported by the claimant's own reported abilities."  *Id*.  She continued, "[i]t is inconsistent with the medical record as a whole and specifically the consultative examiner's assessment."

The ALJ went on to find that Plaintiff's own statements concerning the intensity, persistence and limiting effects were not credible "to the extent they are inconsistent with the above residual functional capacity assessment."  *Id*. 23-24.  The ALJ quoted Plaintiff's statement on her Disability Report that her "emotional state [was] very good at this time."  *Id*. at 24 (citing Exhibit 2E, AR 133-

---

[4]Although the ALJ cited only one exhibit in the record in connection with her discussion of Dr. Burkey's opinions, Exhibit 16 F, it appears that the ALJ was referring to the Medical Source Statement completed by Dr. Berkey on May 4, 2009, that is, Exhibit 15F.

[5]The ALJ misquoted Dr. Burkey who, as noted above, wrote in her Medical Source Statement that Plaintiff's mood disorder "precludes appropriate *reliability* in the workplace."  *Id*. at 350 (emphasis added).

1    140).   She went on to state that in her Disability Report Plaintiff "report[ed] that she stopped

2    working due to her medical conditions which contradicts her testimony at the hearing." *Id.*  The

3    ALJ also relied on the activities described by Plaintiff in her Function Report.  *Id.*  The ALJ

4    summarized many of the activities described by Plaintiff in her Function Report but did not address

5    Plaintiff's statement that "[s]ometimes I am unable to get out of bed due to my bipolar or

6    depression." *See id.*  at 141.  The ALJ also pointed to the fact that Plaintiff had asked to reschedule

7    her appointment with the consultative examiner to attend a bible convention, "indicating her

8    symptoms may not be as urgent and debilitating as she alleges." *Id.*

9         The ALJ also cited Plaintiff's husband's report describing Plaintiff's daily activities in

10   support of her RFC.  *Id.*  The ALJ summarized Mr. Spear's responses describing the activities

11   Plaintiff performs.  *Id.*  She does not discuss the statement by Mr. Spears that sometimes Plaintiff

12   becomes "mentally taxed, thus needing many forms of medications" and that when this occurs, he

13   "need[s] to stay at home and help her." *See id.* at 156.  Nor does the ALJ acknowledge the

14   qualifying language used by Mr. Spear's in describing some of his wife's activities (*e.g.,* "[d]oes

15   chores around as best she can, if she's feeling well").

16        At Step Five, the ALJ found that Plaintiff's past work as a cashier, child care worker, home

17   attendant, and attendant of disabled children requires either medium extertional demands or

18   semiskilled work.  *Id.*  The ALJ therefore found that Plaintiff is unable to perform her past work.  *Id.*

19        The ALJ then found that based on the Plaintiff's age, education, work experience, and

20   residual functional capacity in combination with the Medical Vocational Guidelines, 20 CFR Part

21   404, Subpart P, Appendix 2, there are jobs that exist in significant numbers in the national economy

22   that she can perform.  *Id.* at 25.   In particular, the ALJ cited the VE's testimony that Plaintiff could

23   work as a small products assembler or a cleaner/polisher, and that such positions exist in significant

24   number in the national economy.  *Id.* at 26.  Accordingly, the ALJ found that Plaintiff has not been

25   disabled since March 25, 2008 and does not qualify for SSI benefits.  *Id.*

26        **H.    The Summary Judgment Motions**

27        Plaintiff contends that the ALJ improperly failed to include limitations associated with

28   Plaintiff's mental impairments that were supported by substantial evidence in the record.  In

**United States District Court**
For the Northern District of California

1    particular, Plaintiff argues that: 1) the ALJ erred in giving less weight to the opinions of Dr. Burkey;

2    2) the ALJ failed to properly consider Dr. Wong's assessment; and 3) the ALJ failed to properly

3    consider Dr. Klein's assessment. In light of these impairments, Plaintiff contends, she should be

4    found disabled and the Commissioner's decision should be revered for an award of benefits.

5    Alternatively, the case should be remanded for further proceedings.

6         The Commissioner seeks summary judgment affirming the decision of the ALJ, arguing that

7    it is supported by substantial evidence.

8    **III.  ANALYSIS**

9         **A.  Legal Standard**

10        In reviewing the Commissioner's decisions, courts take as conclusive any findings of the

11   Commissioner which are free from legal error and supported by "substantial evidence." 42 U.S.C. §

12   405(g). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to

13   support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence

14   means "more than a mere scintilla," *Id.*, but "less than a preponderance." *Desrosiers v. Sec'y of*

15   *Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir.1988). Even if the Commissioner's findings

16   are supported by substantial evidence, they should be set aside if proper legal standards were not

17   applied when weighing the evidence and in reaching a decision. *Benitez v. Califano*, 573 F.2d 653,

18   655 (9th Cir. 1978). In reviewing the record, the Court must consider both the evidence that

19   supports and detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279

20   (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

21
22        **B.  Whether the ALJ Erred at Step Four in Determining Plaintiff's Residual
              Functional Capacity**

23        At Step Four, the ALJ found that Plaintiff's mental impairment limited her to unskilled work

24   based on the opinion of the consultative examiner that workplace stress would increase the

25   likelihood of episodes of decompensation. The ALJ did not, however, include limitations related to

26   Plaintiff's activities of daily living, social functioning and concentration, persistence and pace, all of

27   which Dr. Burkey found were "markedly limited." Nor did the ALJ include any limitation reflecting

28   Dr. Burkey's reports that Plaintiff suffered from four or more episodes of decompensation of

United States District Court

For the Northern District of California

1    extended duration or that she was likely to miss more than four days of work each month due to her

2    mental imairment.  No such limitations were included in Plaintiff's RFC because the ALJ concluded

3    that the opinions of Dr. Burkey should be given "little weight."  The Court finds that the ALJ erred

4    in rejecting Dr. Burkey's opinions as to Plaintiff's limitations because she failed to offer specific and

5    legitimate reasons for rejecting the opinions of Plaintiff's treating physician.  The Court further finds

6    that the ALJ's RFC is not supported by substantial evidence in the record.

7         In the Ninth Circuit, courts "distinguish among the opinions of three types of physicians: 1)

8    those who treat the claimant (treating physicians); 2) those who examine but do not treat the

9    claimant (examining physicians); and 3) those who neither examine nor treat the claimant

10   (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821,830 (9th Cir. 1995).  In *Lester*, the court

11   set forth the general standards that are applied in determining the relative weight to be given to the

12   medical opinions of these three types of physicians:

13            As a general rule, more weight should be given to the opinion of a treating
         source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*,
14       853 F.2d 643, 647 (9th Cir.1987).  At least where the treating doctor's opinion is not
         contradicted by another doctor, it may be rejected only for "clear and convincing"
15       reasons.  *Baxter v. Sullivan*,  923 F.2d 1391, 1396 (9th Cir. 1991). We have also held
         that "clear and convincing" reasons are required to reject the treating doctor's
16       ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). Even if the
         treating doctor's opinion is contradicted by another doctor, the Commissioner may
17       not reject this opinion without providing "specific and legitimate reasons" supported
         by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499,
18       502 (9th Cir.1983).

19            The opinion of an examining physician is, in turn, entitled to greater weight
         than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506
20       (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with
         the opinion of a treating physician, the Commissioner must provide "clear and
21       convincing" reasons for rejecting the uncontradicted opinion of an examining
         physician. *Pitzer*,  908 F.2d at 506.  And like the opinion of a treating doctor, the
22       opinion of an examining doctor, even if contradicted by another doctor, can only be
         rejected for specific and legitimate reasons that are supported by substantial evidence
23       in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

24   *Id.*

25            It is undisputed that Dr. Burkey is a treating physician.  Therefore, the applicable standard

26   for determining whether the ALJ provided adequate reasons for rejecting Dr. Burkey's opinions

27   depends on whether they are contradicted by another doctor.  Dr. Klein opined, based on a review of

28   the record, that Plaintiff's diagnosis of "rapid cycling bipolar disorder" should be given little weight,

United States District Court

For the Northern District of California

1  that she has no restrictions on her activities or daily living and only moderate difficulties in

2  maintaining concentration persistence and pace.  AR at 285, 287.  Because these opinions conflict

3  with those of Dr. Burkey, the Court applies the "specific and legitimate" standard.  Below, the Court

4  addresses the reasons offered by the ALJ in support of her determination that Dr. Burkey's opinion

5  should be given little weight, that is: 1) the length of treatment; 2) the "medical record as a whole

6  and specifically the consultative examiner's assessment;" 3) Plaintiff's own reported abilities; and 4)

7  the function report completed by Plaintiff's husband.

8                              **1.        Length of Treatment**

9          The ALJ rejected the opinions of  Dr. Burkey based in part on her finding that Dr. Burkey

10 had rendered her diagnosis only four months after she began treating Plaintiff.  This reason is not

11 legitimate and is not supported by substantial evidence.

12         In determining the appropriate weight to be given a doctor's opinion, the ALJ is required to

13 consider the "[n]ature and extent" of the treating physician's relationship to the Plaintiff.  20 C.F.R.

14 § 404.1527.  Here, however, the ALJ's finding that Dr. Burkey diagnosed Plaintiff's mental

15 disability as bipolar disorder after only four months of treating her is inconsistent with all of the

16 evidence in the record.  The ALJ apparently reached this conclusion based on her erroneous belief

17 that Dr. Burkey "had treated the claimant since January 2009."  AR at 23.  The Medical Source

18 Statement completed by Dr. Burkey upon which the ALJ relied was completed approximately four

19 months after that, on May 4, 2009.  AR at 352.  There is no evidence in the record, however, that

20 supports the ALJ's finding that Dr. Burkey began treating Plaintiff in January 2009.  Although Dr.

21 Burkey completed a Mental Capacities Evaluation for Plaintiff on January 7, 2009 (*see* AR at 306),

22 that form does not state when Dr. Burkey began treating Plaintiff.  Further, the record clearly shows

23 that Dr. Burkey began treating Plaintiff well before January 2009.  In particular, Plaintiff's treating

24 physician for her physical impairments, Dr. Riley (like Dr. Burkey a physician with the Sonoma

25 County Indian Health Clinic), noted on February 5, 2008, that Plaintiff "[h]as been seeing Dr.

26 Burkey – says she's been diagnosed bipolar II and metabolic syndrome."  AR at 188.  Similarly, in

27 Dr. Wong's report, based on an exam performed on May 17, 2008 (that is, over seven months *before*

28 the time the ALJ said Dr. Burkey began treating Plaintiff), he stated that Dr. Burkey was treating

1   Plaintiff for bipolar disorder type 2.  AR at 274.  Finally, in an Evaluation Form for Mental

2   Disorders completed by Dr. Burkey on May 15, 2010 and submitted to the Commissioner before the

3   decision denying benefits became final, Dr. Burkey wrote that she had been seeing Plaintiff on a

4   monthly basis since November 5, 2007.

5   　　　There is no evidence in the record that supports the ALJ's finding that Dr. Burkey had only

6   treated Plaintiff four months when she diagnosed her with bipolar disorder.  Therefore, the 4-month

7   duration of treatment cited by the ALJ does not constitute a legitimate reason for declining to credit

8   Dr. Burkey's opinions.

9   　　　　　　　**2.      Medical Record and Dr. Wong's Assessment**

10  　　　The ALJ also gave "little weight" to Dr. Burkey's assessment because she found it to be

11  inconsistent with the opinions of the consultative examiner, Dr. Wong, and the "medical record as a

12  whole."  The Court finds that these reasons are neither legitimate nor supported by substantial

13  evidence.

14  　　　　　　　**a.      The Consultative Examiner**

15  　　　The ALJ relied on Dr. Wong's assessment to reject Dr. Burkey's opinions and in support of

16  her conclusion that Plaintiff could perform only unskilled work.  The ALJ's erred, however,

17  because: 1) Dr. Wong's opinion is not inconsistent with that of Dr. Burkey; and 2) nothing in Dr.

18  Wong's report suggests that Plaintiff can perform unskilled work.

19  　　　As discussed above, Dr. Wong accepted Plaintiff's bipolar diagnosis and found that while

20  Plaintiff's "ability to maintain an adequate pace and level of endurance during periods that her mood

21  disorder is in remission is very good . . .[w]hen in her depressed phase or manic phase, hypomanic

22  phase, she is likely to experience moderate to marked impairment of her ability to maintain an

23  adequate pace over an eight-hour day."  AR 276.  Dr. Wong further opined that "stress will tend to

24  increase the likelihood of manic or depressive episodes."  *Id*.  The ALJ apparently credited Dr.

25  Wong's opinion regarding the impact of workplace stress.  AR 23 ("Based on the consultative

26  examiner's assessment I find the claimant limited to unskilled work to reduce the possibility of

27  workplace stress").  She cites to no evidence, however, supporting her conclusion that unskilled

28  work carries a reduced level of workplace stress.  Nor does the Court find any evidence in the record

United States District Court

For the Northern District of California

1    or authority supporting such an conclusion.  Further, the ALJ does not offer any explanation for

2    failing to credit Dr. Wong's opinion that when Plaintiff is in a depressed or manic phase she is likely

3    to experience a "marked" impairment of her ability to maintain adequate pace over an eight-hour

4    day.  Indeed, she does not acknowledge this opinion at all.

5         It is true that Dr. Wong stated that it was "unclear" to him the frequency with which manic or

6    depressive episodes were likely to "occur or recur" in the future.  Nothing in Dr. Wong's report,

7    however, suggests a belief that such episodes will not occur.  To the contrary, Dr. Wong accepted

8    Plaintiff's bipolar diagnosis, stated that Plaintiff has "mood swings" and qualifies with the word

9    "currently" his statement that Plaintiff is "cognitively intact and capable of carrying out simple and

10   complex instructions without limitation."  AR 276.  Similarly, he makes clear that her ability to

11   maintain an adequate pace and level of endurance is "very good" "*during periods that her mood*

12   *disorder is in remission.*"  *Id.* (emphasis added).  Further, Dr. Wong himself credits Plaintiff's

13   reports regarding the frequency of cycling moods in the past, stating in the "Longitudinal History"

14   section of his report, "[s]he has gone through these kinds of cycles numerous times, some times

15   eight or nine times a year."  *Id.* at 274.  In short, Dr. Wong does not offer any opinion as to the

16   frequency with which Plaintiff was likely to experience cycling moods in the future and does not

17   question the credibility of Plaintiff's report that in the past she had sometimes suffered up to eight or

18   nine cycles in a year.  Therefore, the Court concludes that his opinion is consistent with that of

19   Plaintiff's treating physician, Dr. Burkey.  The assessment of the consultative examiner is not a

20   specific and legitimate reason for discounting the opinions of Dr. Burkey.

21                    **b.        Medical Record as a Whole**

22        The ALJ also contends that Dr. Burkey's opinions are inconsistent with "the medical record

23   as a whole."   The ALJ does not identify any particular opinion or records in connection with this

24   reasons and therefore, it does not constitute a "specific" reason for disregarding Dr. Burkey's

25   opinion.  To the extent the ALJ was referring to Dr. Klein's conclusion that Plaintiff's bipolar

26   diagnosis should not be credited because it was inconsistent with the 2005 Medical Expert Reports

27   by Plaintiff's treating physicians, it is also not a "legitimate" reason supported by substantial

28   evidence.

First, Dr. Klein apparently relied on reports by Kaiser physicians who treated Plaintiff for her physical impairments in 2005 – and discounted the diagnosis in the consultative examiner's report – on the basis that Dr. Wong, unlike the Kaiser physicians, was not a treating physician. However, Dr. Klein failed to acknowledge that Dr. Wong's bipolar diagnosis was based on the opinion of Dr. Burkey, who herself was a treating physician. Because Dr. Klein's assessment failed to take into account the diagnosis of Plaintiff's treating physician, his conclusion that the bipolar diagnosis should not be credited is not supported by substantial evidence.

Second, a review of the Medical Expert Reports from 2005 (even assuming these reports are relevant to a disability that is alleged to have an onset date of August 3, 2006) reflects that Plaintiff's mental impairment was frequently referenced by the physicians who treated her physical conditions, at least as to Plaintiff's depression. *See* AR 219, 221, 223, 225, 227, 229, 231, 233, 235. As it is undisputed that Plaintiff's bipolar disorder involves episodes of depressive decompensation as well as mania, the 2005 records are not inconsistent with the conclusion of Dr. Burkey (as well as the consultative examiner) that Plaintiff suffers from mood swings related to her bipolar disorder. At most, these records suggest that Plaintiff might experience more depressive episodes of decompensation than she does manic. They do not support the ALJ's conclusion that Plaintiff is capable of performing unskilled work with no other limitations based on her mental impairment.

The Court concludes that the ALJ's reliance on the medical record as a whole in support of her conclusion that Dr. Burkey's opinion should be given "little weight" is not a specific and legitimate reason supported by substantial evidence.

### 3.    Plaintiff's Reported Abilities

The ALJ also cited Plaintiff's "own reported abilities" in support of her conclusion that Dr. Burkey's opinions should be given "little weight." In doing so, the ALJ relied on the activities listed by Plaintiff in her Function Report but found not credible Plaintiff's statements concerning the intensity, persistence and limiting effects of her impairment. The ALJ's conclusion is not supported by substantial evidence.

A claimant's credibility is the degree to which the claimant's statements can be believed and accepted as true. SSR 96-7p at 4. The ALJ must make credibility findings to determine the truth of

1    a claimant's description of her symptoms and pain.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

2    1996) (holding ALJ responsible for determining credibility and resolving conflicts in medical

3    testimony).  When making such findings, the ALJ "must consider the entire case record and give

4    specific reasons for the weight given to the [claimant's] statements.  The reasons for the findings

5    must be grounded in the evidence and articulated in the determination or decision." *Id*.  When there

6    is no affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for

7    rejecting the claimant's testimony.  *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005) (citation

8    omitted).  The Ninth Circuit has articulated several factors that can be considered in determining

9    whether a claimant's symptom testimony is credible.  These include the claimant's "reputation for

10   truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his

11   daily activities, his work record, and testimony from physicians and third parties concerning the

12   nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec.*

13   *Administration*, 119 F.3d 789, 792 (9th Cir. 1997).

14        The ALJ did not find that Plaintiff is malingering and therefore, the ALJ may reject

15   Plaintiff's testimony about her symptoms only based on clear and convincing reasons.  The ALJ

16   failed to offer such reasons, however.  The ALJ offered three reasons for rejecting Plaintiff's

17   statements about the impact of her impairment on her ability to function: 1) a purported

18   inconsistency between Plaintiff's testimony at the hearing and her disability report; 2) the activities

19   Plaintiff reported she performs on her Function Report; and 3) the fact that Plaintiff asked to

20   reschedule an appointment to allow her to attend a bible convention.

21                    **a.        Inconsistency between Function Report and other Statements**

22        At the hearing, the ALJ asked Plaintiff why she "quit work in August 2006."  AR 39.

23   Plaintiff responded that the funds for her position had run out.  *Id*.  Similarly, she reported to Dr.

24   Wong that she lost her job as a teacher's assistant in 2006 due to "cutbacks." *Id*. 274.  However, in

25   a Function Report that asked the more general question, "[w]hy did you stop working?" Plaintiff

26   responded, "due to my medical condition."  The ALJ points to a purported discrepancy between

27   these answers in support of her finding that Plaintiff's statements were not fully credible.  This is not

28   a clear and convincing reason for rejecting Plaintiff's testimony, however, because the answers were

1   in response to two different questions.  Plaintiff's responses offer no support for the conclusion that

2   her statements about her symptoms were not credible.

###   b.        Reported Activities

4        The ALJ also cites the activities reported by Plaintiff on her Function Report, as well as her

5   statement that her emotional state was "very good" at this time.  The ALJ ignores, however,

6   qualifying language and statements in the Function Report.  For example, the ALJ stated that

7   Plaintiff "reports she takes care of her husband and children, cooks and cleans, does laundry, does

8   grocery shopping, paperwork and drives to an from school, does some gardening . . .[and] cares for

9   her dog and three cats."  AR 24.  The ALJ does not mention that Plaintiff also stated on her Function

10  Report that "[m]y husband takes the children to work or school when I am unable, and feeds the

11  animals."  AR 142.  Nor does the ALJ mention that Plaintiff states she needs help with house and

12  yard work because "of fatigue or aches and pains or just feel depressed."  AR 143.  Finally, the ALJ

13  does not address Plaintiff's statement that "[s]ometimes I will not be able to get out of bed due to my

14  bipolar or depression."  AR 141.  Because the ALJ does not accurately represent Plaintiff's

15  description of her daily activities, those activities do not support the ALJ's conclusion that Plaintiff's

16  statements about her impairment are not credible.

###   c.        Bible Convention

18       Finally, the ALJ mentions the fact that Plaintiff requested that an examination be rescheduled

19  so that she could attend a bible convention.  At the hearing, the ALJ did not ask Plaintiff to describe

20  the nature of her participation in this event and there is no evidence in the record on this question.

21  Thus, Plaintiff's request does not constitute a clear and convincing reason for discounting her

22  statements relating to the impact of her mental impairment on her ability to function.

23       Because the ALJ improperly failed to credit Plaintiff's statements, her reliance on Plaintiff's

24  reported abilities to support her rejection of Dr. Burkey's opinion was also improper.

###   4.        Spouse's Function Report

26       The ALJ also contends that the RFC limiting Plaintiff only to unskilled labor is consistent

27  with the Function Report completed by Plaintiff's husband.  To the extent she implies that Mr.

28

1    Spears' report also justifies rejecting Dr. Burkey's opinion, the Court finds that this is not a

2    legitimate reason supported by substantial evidence.

3         In the Ninth Circuit, the ALJ must consider and credit lay witness testimony unless she gives

4    reasons "germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (holding

5    that "friends and family members in a position to observe a claimant's symptoms and daily activities

6    are competent to testify as to her condition"); *Stout v. Comm'r.*, 454 F.3d 1050, 1053 (9th Cir. 2006)

7    ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony

8    concerning a claimant's ability to work."); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)

9    ("Lay testimony as to a claimant's *symptoms* is competent evidence which the Secretary must take

10   into account" and therefore "*cannot* be disregarded without comment"). Here, the ALJ  relies on the

11   report of Mr. Spears in support of her conclusions.  However, she mischaracterizes his responses by

12   failing to acknowledge statements indicating that Plaintiff's abilities are limited more significantly

13   that is reflected in the ALJ's RFC.  For example, she does not address Mr. Spears' statements that

14   Plaintiff "does chores *as best she can if she's feeling well*" or that he sometimes has to stay home

15   from work to help Plaintiff when she is "mentally taxed." AR 149, 156.  Because the ALJ

16   selectively ignored statements by Plaintiff's spouse that were inconsistent with her RFC, the ALJ

17   erred in relying on Mr. Spears' report in support of her RFC and to reject Dr. Burkey's opinions.

18        **5.    Conclusion**

19        For the reasons stated above, the Court finds that the ALJ erred in finding that the opinions

20   of Plaintiff's treating physician, Dr. Burkey, are entitled to "little weight."  The Court further finds

21   that the ALJ's RFC is not supported by substantial evidence.

22        **C.    Remedy**

23        "The decision whether to remand a case for additional evidence or simply to award benefits

24   is within the discretion of the court." *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998).

25   "Remand for further administrative proceedings is appropriate if enhancement of the record would

26   be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  Conversely, "where the record

27   has been developed fully and further administrative proceedings would serve no useful purpose, the

28

United States District Court

For the Northern District of California

district court should remand for an immediate award of benefits." *Id.*  With respect to an ALJ's improper disregard of evidence:

> [T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.  See also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995) (Where the ALJ "fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law'" (citation omitted)).

In this case, the Court has found that the ALJ improperly failed to credit Dr. Burkey's opinions.  The Court therefore credits those opinions, including Dr. Burkey's opinions that: 1) even at the unskilled level, Plaintiff is unable to meet competitive standards as to completing a normal workday and workweek without interruption from psychologically based symptoms or performing at a consistent pace without a reasonable number and length of rest periods; and 2) Plaintiff's impairment would likely cause her to miss more than four days of work a month.  AR 349, 352. When the ALJ added these limitations to her hypothetical, the VE testified that an individual with these limitations would be "outside the bounds of competitive employment in pretty much any industry."  Therefore, it is clear from the record that the ALJ would be required to award benefits were the Court to remand for further proceedings with instructions that the ALJ credit Dr. Burkey's opinions.

Because no purpose would be served by requiring further proceedings and would only delay the award of benefits, the Court finds that it is appropriate to reverse the Commissioner's decision and remand for an award of benefits.

**IV.     CONCLUSION**

    For the foregoing reasons, the Court GRANTS Plaintiff's Motion and DENIES Defendant's Motion.  The Court reverses the ALJ's decision and REMANDS Plaintiff's claim for award of benefits.

    IT IS SO ORDERED.


Dated: August 9, 2012


_____
JOSEPH C. SPERO
United States Magistrate Judge